# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk  DIVISION

SHAQUITA LIGE,

      Plaintiff,

v.

BAE SYSTEMS NORFOLK SHIP
REPAIR, INC.,
a wholly owned subsidiary of BAE
Systems, Inc.,

      and

BAE SYSTEMS SHIP REPAIR, INC.,
a wholly owned subsidiary of BAE
Systems, Inc.,

      Defendants.

Civil Case No. 2:23cv682

Judge:

**COMPLAINT**
and **JURY DEMAND**

## NATURE OF THE CASE

1. This is an employment discrimination case alleging sex discrimination pursuant to Title VII and the Virginia Human Rights Act ("VHRA") and retaliation under the Family and Medical Leave Act ("FMLA").

## PARTIES AND JURISDICTION

2. Plaintiff Shaquita Lige is a woman and a resident of Chesapeake, VA.

3. Defendant BAE Systems Norfolk Ship Repair, Inc. ("BAE") is a wholly owned subsidiary of BAE Systems Ship Repair, Inc. and BAE Systems, Inc., and has its principal place of business in Norfolk, Virginia.

4. Defendant BAE Systems Ship Repair, Inc. is a wholly owned subsidiary of BAE Systems, Inc., a global defense, security, and aerospace company headquartered in Arlington,

Virginia and one of the largest private employers in the Virginia Beach-Norfolk-Newport News, Virginia area (hereinafter collectively referred to with BAE Systems Norfolk Ship Repair, Inc. as "Defendant").

5.     At all relevant times herein, Ms. Lige worked for Defendants as a shipfitter.

6.     Plaintiff exhausted her administrative remedies with the Equal Employment Opportunities Commission. This Complaint is being timely filed.

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and has supplemental jurisdiction over Plaintiff's claims under the VHRA.

8.     Venue is proper in the Eastern District of Virginia pursuant to 42 U.S.C. § 2000e-5(f)(3) in that the unlawful employment practices alleged herein occurred within this district, and in that Plaintiff would have worked here but for the unlawful employment practices.

## FACTUAL ALLEGATIONS

### Background and History of Plaintiff's Employment at Defendant

9.     Defendant hired Plaintiff Lige as a first class Helper in Defendant's plate shop in May 2014.

10.     For most bargaining unit positions in Defendant's workplace, employees can progress upward through positions in their trade as follows: from Helper third class, to second class, to first class; to Handyperson third class, to second class, to first class; to Mechanic third class, to second class, to first class; and then to Specialist.

11.     For employees in bargaining unit positions in Defendant's workplace, "step raises" through these levels are the means of increasing pay.

12. A step raise does not require that a position be "open" for the employee to be promoted into the next level; rather, any employee is eligible to receive a step raise up to the next level when he or she has attained the qualifications to perform the work required in that position.

13. In 2017, Plaintiff's supervisor recommended her for promotion to Third Class Mechanic Shipfitter based on her skills and performance.

14. Instead, Defendant only promoted her to Third Class Handyperson, a full three steps lower.

15. Even though the supervisor had shown Ms. Lige his recommendation to ensure she knew its contents, Defendant's Human Resources refused to provide her with a copy for her own files.

16. In March 2018, Plaintiff applied again for promotion to Third Class Shipfitter in light of the skills she already possessed.

17. Again, Ms. Lige was only promoted to Second Class Handyperson, a position two steps lower.

18. By contrast, Martin Perez, a male employee who had begun work as a Helper with Ms. Lige in 2014, who was laid off in 2015, and who then applied for a job at Defendant in 2018—was hired back in as a Third Class Shipfitter, while Plaintiff remained stuck in a lower paid position two steps below.

19. In August 2018, Plaintiff entered Defendant's Apprenticeship Program.

20. While in the program, each apprentice's supervisor scores the apprentice on multiple metrics.

21. On her first evaluation in the program, Ms. Lige's supervisor Steve Ywecic recognized her skills by giving her "above average" performance scores in multiple areas. Ywecic told Ms. Lige that he was proud of her.

22. However, supervisor Clifton Sanderlin reduced Ms. Lige's scores so that none of them were "above average", stating that Ms. Lige "needs room to improve."

23. By contrast, male apprentice Mikel (spelling unknown) Wilson, who began his apprenticeship at the same time as Ms. Lige but who had only worked at BAE for approximately six months, scored "above average" in several areas, and Sanderlin permitted him to keep those scores.

24. Apprentices' assignments to supervising mechanics rotated on a six month basis. When it was time for Ms. Lige's first re-assignment, she was assigned to mechanic Robert Hughes.

25. Hughes told Tony Fields, Ms. Lige's apprentice instructor, that he would not train a female apprentice.

26. Fields then told Ms. Lige that for this reason she had to be reassigned. He insisted that "if he doesn't want a female that's his choice."

27. BAE instead assigned apprentice Michael Dunaway, a man, to Hughes.

28. BAE shifted Ms. Lige to apprentice with a mechanic with the last name of Johnson (first name unknown). Johnson was significantly less experienced than Hughes, and less capable of instructing Ms. Lige: two employees who are both nominally first class mechanics can have wildly different experience levels—one may have been a first class mechanic for 25 years, while another may have only six months' tenure in the position.

29.     Ms. Lige spoke with supervisor Sanderlin and asked him why he would assign her to a mechanic who doesn't know anything. Sanderlin simply replied "I know, I interviewed him."

30.     Ms. Lige remained with Johnson, and received worse training as a result.

31.     Ms. Lige received three step increases in the Apprenticeship Program based on her good performance.

32.     In August 2020, Respondent baselessly disciplined Ms. Lige with a suspension, as a former BAE Apprentice Instructor states under oath:

> At lunchtime, multiple employees were gathered around the security gate talking and getting ready to leave for lunch, including myself and Ms. Lige.
> The security guard became agitated and began telling the employees something to the effect that they were backing things up, and telling us to get away from the turnstile. All the employees complied, but the guard singled out and continued to have words for Ms. Lige.
> The security guard asked to see her badge, and she showed him her badge immediately. Multiple employees had already relaxed and lowered their masks, because they were about to head out to lunch, and once past the gate employees were not required to wear masks.
> **The security guard singled out Ms. Lige and told her to pull up her mask, and she complied and pulled it up.** Nonetheless, he continued to talk at Ms. Lige and give her a hard time. The guard did not take issue with any of the other employees whose masks were lowered.
> Then the whistle blew, signaling that employees were off the clock and free to leave for lunch, and Ms. Lige and the rest of the employees started to walk out of the gate.
> The guard continued to yell at Ms. Lige in a rude manner, and she said something back to him, but **at no time did she shout expletives, or curse, or use any vulgarity whatsoever. She was not disrespectful to the guard.**
> Human resources never interviewed me about this incident even though I witnessed it.

See Ex. A, Declaration of Chester Jones (emphasis added).

33.     Prior to this baseless discipline, Ms. Lige had never been suspended. She had received only one warning relating to attendance – years prior, before she had even entered the apprenticeship program.

5

34. Defendant used its baseless disciplinary action as a reason to remove Ms. Lige from the Apprenticeship Program.

35. When it did so, she already had the skills required to perform as a Third Class Shipfitter. For instance, she was regularly using a plasma cutter and torches—tools that a handyperson is not supposed to use. She had completed and passed her class in blueprint reading; handypersons, by contrast, cannot deal with blueprints.

36. In fact, as noted above, her former supervisor had acknowledged she possessed the skills to perform as a third-class mechanic years prior.

37. Nonetheless, Respondent exited Ms. Lige from her apprenticeship as a Second Class Handyperson—the same position at which she had entered, despite an intervening two years of work and two years of skill-building.

**Discriminatory Denial of Promotion and Pay Increase At Issue**

38. On November 6, 2020, Ms. Lige completed a promotion request form seeking the position of Third Class Shipfitter, and brought it to supervisor Sanderlin, asking for his support. Ms. Lige documented this conversation with a contemporaneous note.

39. Sanderlin told her to wait six months, saying she could not put in for this raise because of her attendance.

40. At this time, Ms. Lige had <u>approved</u> intermittent FMLA leave to care for a family member, and her absences involved use of that approved FMLA time. Ms. Lige pointed out to Sanderlin that her use of approved FMLA leave should not count against her in promotion.

41. He further told her she should not apply until six months had passed from the disciplinary action she had received.

42. Ms. Lige was unhappy to continue in her lower-paid position when she was fully qualified for the promotion, but complied.

43. On May 25, 2021, having complied with her supervisor's instructions and waited a full six months, Plaintiff again approached Sanderlin asking him to support her promotion. She again documented this conversation contemporaneously.

44. Ms. Lige attempted to give Sanderlin her completed promotion request paperwork. Once again, Sanderlin told her that her attendance was prohibitive, and told her to wait until it was better. He refused to support her promotion.

45. Ms. Lige reminded Sanderlin that she had already waited many months. Sanderlin told her there was no point in his even conveying the form to Human Resources because they would "just kick it back" due to her attendance—again referring to her use of approved intermittent FMLA.

46. The normal promotion procedure is for an employee to provide the promotion request form to her supervisor; the supervisor then signs the form indicating that they support the promotion, writes any notes in support that they wish to add, and the supervisor then conveys it to Human Resources.

47. In fact, employees are not even permitted to physically go to Human Resources during the workday without their supervisor's approval.

48. In other words, an employee's supervisor's support is decisive in denying a promotion, because he acts as the gate-keeper to whether an employee may even be considered for promotion.

49. Defendant's normal practice is to deny a promotion when the candidate's supervisor refuses to support the promotion.

50.     Plaintiff's male co-workers, including but not limited to James Eley and Kerris Adams, have followed exactly this procedure, bringing their promotion requests to Sanderlin, and Sanderlin has supported their promotions and submitted their promotion requests.

51.     Defendant's policy or practice is to discriminate against women, including but not limited to Plaintiff Lige, with respect to pay and promotions by denying support for their promotion requests when they have all the requisite skills for the promotion, and delaying or denying the promotion; whereas by contrast Defendant supports similarly situated male employees' promotion requests, and does not delay nor deny their promotions on account of their sex.

52.     Seeing that it would be impossible to rise within the company to the position warranted by her skills due to sex discrimination, Ms. Lige gave BAE notice that same day that she was quitting her position with Defendant.

53.     As a result of Defendant's discrimination, Plaintiff experienced emotional distress and economic harm.

## COUNT I:

## DISCRIMINATION ON THE BASIS OF SEX
## IN VIOLATION OF TITLE VII

54.     Plaintiff Lige incorporates by reference all prior paragraphs.

55.     Defendant engaged in discrimination on the basis of sex by, inter alia, denying Plaintiff promotion and associated pay increases.

56.     BAE's conduct constituted illegal discrimination based on sex and illegal discrimination against Plaintiff in the terms and conditions of her employment.

57.     Defendant did not engage in these actions toward Plaintiff's similarly situated male coworkers.

58. As a direct, actual and proximate result of the Defendant's sex discrimination against her, Plaintiff has suffered significant pecuniary and non-pecuniary damages including lost wages, mental anguish, pain, suffering, humiliation and loss of quality and enjoyment of life.

**WHEREFORE**, Plaintiff Lige respectfully requests that this Court:

1) Enter a declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

2) Enter an injunction and order permanently restraining the Defendant from engaging in such unlawful conduct;

3) Order the Defendant to make Plaintiff whole with appropriate lost earnings, future lost earnings, compensation for loss of future pensions and benefits with pre-judgment and post-judgment interest as applicable;

4) Order the Defendant to make Plaintiff whole by providing all compensation contemplated under Title VII for non-pecuniary losses including, without limitation, pain, suffering, inconvenience, frustration, loss of quality of life, humiliation, loss of reputation and mental anguish in amounts to be proved at trial with pre-judgment and post-judgment interest as applicable;

5) Order the Defendant to pay Plaintiff punitive damages in amounts to be proved at trial with pre-judgment and post-judgment interest as applicable and in amounts sufficient to adequately punish the Defendant for engaging in this conduct and to prevent this conduct in the future;

9

6) Order the Defendant to pay Plaintiff's reasonable attorney's fees, expert fees and all costs incurred in bringing and prosecuting this action with pre-judgment and post-judgment interest as applicable; and

7) Enter an order providing all such other relief as this Court deems appropriate.

## COUNT II:

### DISCRIMINATION ON THE BASIS OF SEX
### IN VIOLATION OF THE VHRA

59. Plaintiff Lige incorporates by reference all prior paragraphs.

60. Defendant engaged in discrimination on the basis of sex in violation of the VHRA by, inter alia, denying Plaintiff promotion and associated pay increases.

61. BAE's conduct constituted illegal discrimination based on sex and illegal discrimination against Plaintiff in the terms and conditions of her employment.

62. Defendant did not engage in these actions toward Plaintiff's similarly situated male coworkers. As a direct, actual and proximate result of the Defendant's sex discrimination against her, Plaintiff has suffered pecuniary and significant non-pecuniary damages including mental anguish, pain, suffering, humiliation and loss of quality and enjoyment of life and including lost wages.

**WHEREFORE,** Plaintiff Lige respectfully requests that this Court:

1) Enter a declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State of Virginia;

2) Enter an injunction and order permanently restraining the Defendant from engaging in such unlawful conduct;

3)      Order the Defendant to make Plaintiff whole with appropriate lost earnings, future lost earnings, compensation for loss of future pensions and benefits with pre-judgment and post-judgment interest as applicable;

4)      Order the Defendant to make Plaintiff whole by providing all compensation contemplated under the VHRA for non-pecuniary losses including, without limitation, pain, suffering, inconvenience, frustration, loss of quality of life, humiliation, loss of reputation and mental anguish in amounts to be proved at trial with pre-judgment and post-judgment interest as applicable;

5)      Order the Defendant to pay Plaintiff punitive damages in amounts to be proved at trial with pre-judgment and post-judgment interest as applicable and in amounts sufficient to adequately punish the Defendant for engaging in this conduct and to prevent this conduct in the future;

6)      Order the Defendant to pay Plaintiff's reasonable attorney's fees, expert fees and all costs incurred in bringing and prosecuting this action with pre-judgment and post-judgment interest as applicable; and

7)      Enter an order providing all such other relief as this Court deems appropriate.

## COUNT III:

### RETALIATION
### IN VIOLATION OF THE FMLA

63.     Plaintiff Lige incorporates by reference all prior paragraphs.

64.     BAE willfully retaliated against Plaintiff for exercising her rights under the FMLA by, inter alia, using her FMLA leave as a factor in its decision not to promote her, and denying her a promotion she otherwise would have received.

11

65. As a direct, actual and proximate result of the Defendant's retaliation against her, Plaintiff has suffered significant pecuniary and non-pecuniary damages including mental anguish, pain, suffering, humiliation and loss of quality and enjoyment of life, and lost wages.

**WHEREFORE**, Plaintiff Lige respectfully requests that this Court:

1) Enter a declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

2) Enter an injunction and order permanently restraining the Defendant from engaging in such unlawful conduct;

3) Order the Defendant to make Plaintiff whole with appropriate lost earnings, future lost earnings, compensation for loss of future pensions and benefits with pre-judgment and post-judgment interest as applicable;

4) Order the Defendant to make Plaintiff whole by providing all compensation contemplated under the FMLA for non-pecuniary losses including, without limitation, pain, suffering, inconvenience, frustration, loss of quality of life, humiliation, loss of reputation and mental anguish in amounts to be proved at trial with pre-judgment and post-judgment interest as applicable;

5) Order the Defendant to pay Plaintiff punitive damages in amounts to be proved at trial with pre-judgment and post-judgment interest as applicable and in amounts sufficient to adequately punish the Defendant for engaging in this conduct and to prevent this conduct in the future;

6)     Order the Defendant to pay Plaintiff's reasonable attorney's fees, expert fees and all costs incurred in bringing and prosecuting this action with pre-judgment and post-judgment interest as applicable; and

7)     Enter an order providing all such other relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff herein requests a jury trial on all matters raised in this Complaint.

Dated: December _____, 2023

_Shaquita Lige_  3/25/2024
Shaquita Lige (pro se)

Shaquita Lige (757)386-6322
1401 Barlingame PL Apt 303, Chesapeake VA, 23320

BAE Systems
750 W Berkley Ave Norfolk VA

Shaquita Lige
_____
Plaintiff(s),

v.

BAE SYSTEMS NorfolkShiprepair, INC
Defendant(s).

Civil Action Number: 2:23cv682

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of**_____.
(Title of Document)

_____
Name of *Pro Se* Party (Print or Type)

Shaquita Lige 3/25/24
Signature of *Pro Se* Party

Executed on: _____ (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** Pro Se _____.
(Title of Document)

Joshua Friedman
(Name of Attorney)

1050 Seven Oaks Ln, Mamaroneck, NY 10591
(Address of Attorney)

(888) 369-1119 x4
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

Shaquita Lige
(Name of *Pro Se* Party (Print or Type)

Shaquita Lige
Signature of *Pro Se* Party

Executed on: _____ (Date)